**ARM Lawyers**
Scott E. Brannan, Esq.
PA Bar #: 325985
115 East Broad Street
Bethlehem, PA 18018
610-849-2788
*Admitted pro hac vice for the Debtor*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. 2019-13218-BFK |
| CURTIS C. CAIN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| CURTIS C. CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. |
| | ) | |
| v. | ) | |
| | ) | |
| NAVIENT SOLUTIONS, LLC, | ) | |
| AMERICAN EDUCATION SERVICES, | ) | |
| TURNSTILE CAPITAL MANAGEMENT, | ) | |
| LLC AND JPMORGAN CHASE | ) | |
| BANK N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT

Plaintiff, CURTIS C. CAIN, by and through his undersigned counsel, hereby files this Complaint against Defendants, on personal knowledge as to those matters within his capacity, and information and belief as to all other matters, as follows:

1

# I.
# **PRELIMINARY STATEMENT**

1. This action is brought by Curtis C. Cain to enforce his rights under bankruptcy law regarding fifteen (15) direct to consumer private student loans for which Defendant Navient and/or Defendant JPMorgan and/or Defendant Turnstile act as the owner, servicer and debt collector against him and one (1) private student loan for which Defendants AES and/or Turnstile act as the owner, servicer and debt collector against him ("the Subject Loans"). The Subject Loans are outside the three exceptions to bankruptcy discharge prescribed by 11 U.S.C. §523(a)(8) and thus should be discharged in the Chapter 7 bankruptcy filed by Plaintiff. Plaintiff is not seeking a discharge for any federal student loans. Plaintiff attended Johnson C. Smith University and Auburn University between 2004 and 2010 where he received his Bachelor of Science degree and Master's degree respectively. During these academic years, Plaintiff incurred federal loans in substantial amounts as well as scholarships and fellowship aid in substantial amounts. The Subject Loans were extended to him in addition to substantial amount of loans he received directly from the U.S. Department of Education, scholarships, grants and fellowship aid received. Additionally, one of the Subject Loans, for which Plaintiff was a co-signor, was not extended for the educational expenses of Plaintiff, Plaintiff's spouse or Plaintiff's dependent. As such, The Subject Loans are not "qualified educational loans" pursuant to section 523(a)(8) of the Bankruptcy Code because they were made in excess of the Cost of Attendance published by the identified schools and/or were not made to an eligible student and therefore have no protection afforded under law; they should be automatically discharged upon entry of this Court's discharge order.

## II.
## PARTIES

2. Plaintiff, CURTIS C. CAIN, is an individual and a resident of this district who filed for bankruptcy relief in this Court in 2019.

3. Defendant NAVIENT SOLUTIONS, LLS ("Navient") is a business entity which, itself, or on behalf of other lenders, engages in commercial activity in this District, in the form of originating, servicing and collecting of consumer debts. Navient is headquartered in Wilkes-Barre, Pennsylvania and can be served through its registered agent.

4. Defendant AMERICAN EDUCATION SERVICES ("AES") is a business entity which, itself, or on behalf of other lenders, engages in commercial activity in this District, in the form of originating, servicing and collecting of consumer debts. AES is headquartered in Harrisburg, Pennsylvania and can be served through its registered agent.

5. Defendant TURNSTILE CAPITAL MANAGEMENT, LLC ("Turnstile") is a business entity which, itself, or on behalf of other lenders, engages in commercial activity in this District, in the form of originating, servicing and collecting of consumer debts. Turnstile is headquartered in San Diego, California and can be served through its registered agent.

6. Defendant JPMORGAN CHASE BANK N.A. ("JPMorgan") is a business entity which, itself, or on behalf of other lenders, engages in commercial activity in this District, in the form of originating, servicing and collecting of consumer debts. JPMorgan is headquartered in New York, New York and can be served through its registered agent.

## III.
## JURISDICTION AND VENUE

7. This Adversary Proceeding is brought under Case Number 2019-13218-BFK.

8. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt.

9. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8) and Federal Rules of Bankruptcy Procedure Rule 7001.

10. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

## IV.
## STATEMENT OF FACTS

**A. The Distinction between Dischargeable and Non-Dischargeable Student Loans**

11. The Subject Loans encompass eleven (11) direct to consumer Tuition Answer loan accounts; two (2) Chase Undergraduate Loan Program Direct to Consumer accounts; and two (2) Graduate Loan Program Direct to Consumer accounts through Defendant Navient and/or Defendant JPMorgan and/or Defendant Turnstile, and one (1) ALPLN loan account through Defendant AES and/or Defendant Turnstile.

12. The Subject Loans are private loans made based on the borrower's credit score and/or one or more co-signers and are offered in addition to the federal loans provided by the U.S. Department of Education. These private loans do not represent the flexible repayment terms or borrower protections that federal student loans provide. Rather they carry variable high interest rates, loan limits, terms and conditions that are determined by the lender.

13. Plaintiff incurred the Subject Loans shortly before he had to pay for education expenses relating to obtaining an undergraduate degree and master's degree during the academic years of 2006-2009.

14. Defendants are the owners, servicers, and/or debt collectors of the Subject Loans which carry variable interest rates ranging from 3.750% to 9.750%; their current balances, including accrued interests, stand at $237,588.29.

15. The legislature, in enacting §523(a)(8) did not intend to extensively expand non-dischargeability to private educational loans. Section 523(a)(8)(B) provides only limited protection from discharge of bankruptcy. A loan is exempt from discharge pursuant to the section only if it is an educational loan that is also a qualified educational loan.

16. The term "educational loan" is not defined in the Code, but legislative history and circuit caselaw demonstrate that "educational loans" are different from other types of consumer debts because they are made without for-profit business consideration including credit check or co-signer, and offered at a low interest rate to further the public good, which is to protect the solvency of government education loan programs for future students.

17. The term "Qualified Education Loan" is defined in 26 U.S.C. §221(d)(1) of the Internal Revenue Code as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses."

18. Qualified higher education expenses, therefore, are limited to certain expenses incurred at "an eligible institution," *i.e.*, one certified by the Department of Education under Title IV.[1] To qualify under these statutes, among other requirements, the particular loan must be used "solely to pay qualified higher education expenses," which are defined as the "cost of attendance at an eligible educational institution."

---

[1] 26 U.S.C. §221(d)(1); 26 C.F.R. §1.221-1(e) ("In general, an eligible educational institution means any college, university, vocational school, or other postsecondary educational institution described in section 481 of the Higher Education Act of 1965 (20 U.S.C. 1088), as in effect on August 5, 1997, and certified by the U.S. Department of Education as eligible to participate in student aid programs administered by the Department, as described in section 25A(f)(2) and §1.25A-2(b).")

19. "Cost of Attendance" is a term of art found in section 472 of the Higher Education Act at 20 U.S.C.§1087ll. Cost of Attendance may include tuition, fees, room and board, books, and living expenses. Cost of Attendance is determined by the eligible Title IV institution, reported to the Department of Education, and published both on the school's website and on the Integrated Postsecondary Education Data System's website (IPEDS).

20. Furthermore, the indebtedness must also be incurred by the taxpayer solely to pay qualified higher education expenses: "which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred." 26 U.S.C. section 221(d)(1)(A).

21. To be protected from discharge pursuant to §523(a)(8)(B) as a Qualified Education Loan, each of the Subject Loans must be both (i) an educational loan, and (ii) made for the expenses covered by the Cost of Attendance at a Title IV school.

22. The private student loans such as the Subject Loan are made to persons to cover expenses exceeding the Cost of Attendance. Therefore, they are neither (i) educational loans, nor (ii) Qualified Education Loans. They are unsecured consumer debts dischargeable pursuant to the Bankruptcy Code.

23. Defendants were and are fully aware that loans such as the subject loans were potentially dischargeable. For more than a decade, major lenders and underwriters have included in student loan asset-backed securities' prospectuses ("SLABS") language warning investors that, pursuant to §523(a)(8), only private loans made for qualified expenses are excepted from discharge. [2]  For example, the Securitization Prospectus includes the following:

---

[2] See, e.g., SLM Student Loan Trust 2007-8 Prospectus Supplement to Base Prospectus dated October 16, 2007, at 33 (https://www.navient.com/assets/about/investors/debtasset/SLM-Loan-Trust/06-10/20007-8/20078.pdf) ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are

6

> **Risk of Bankruptcy Discharge of Private Credit Student Loan**: Currently private education loans *made for qualified education expenses* are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the borrower's cost of attendance. This process does not involve school enrollment verification as an additional criteria and, therefore, may be subject to some additional risk that *the loans were not used for qualified education expenses and thus could become dischargeable in a bankruptcy proceeding*. If you own any notes in a related issuing entity, you will bear any *risk of loss resulting from the discharge of any borrower of a private education loan . . . .*

See Navient Loan Trust 2015-1 Prospectus Supplement dated February 12, 2015, at 26 (https://www.navient.com/assets/Final-Prospectus-2015-1.pdf) (emphasis added).

24. In addition, dozens of bankruptcy courts across the country have repeatedly held that not all student loans are non-dischargeable under the Code.

25. Defendants, therefore, recognized the risk of the discharge in bankruptcy of Consumer Education Loans that are not used for Qualified Education Expenses, such as the Subject Loans, and assumed that risk in lending the Subject Loans to Plaintiff.

**B. The Subject Loans are not "qualified educational loans" pursuant to section 523(a)(8) of the Bankruptcy Code because they were made in excess of the Cost of Attendance published by the identified schools and/or were not made to an eligible student and therefore have no protection afforded under law**

26. Plaintiff attended Johnson C. Smith University during the 2004-2008 academic terms as an undergraduate student. Plaintiff attended Auburn University during the 2008-2010 academic terms as a graduate student. However, the Subject Loans were only extended to Plaintiff during the 2006-2008 academic years at Johnson C. Smith University and the 2008-2009 academic year at Auburn University. The "Cost of Attendance" for qualified

---

disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including in their certification of the cost of attendance for their education. This process does not involve school certification as additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified education expenses. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan …") (emphasis added); see also SLM Loan Trust 2008-1 Prospectus

7

tuition and related expenses at Johnson C. Smith University and Auburn University for each relevant year respectively was as follows:

   a. In 2006-07, the Cost of Attendance was $21,604.00 (See attached **Exhibit A**).

   b. In 2007-08, the Cost of Attendance was $22,404.00 (See attached **Exhibit B**).

   c. In 2008-09, the Cost of Attendance was $29,646.00 (See attached **Exhibit C**).

27. During the relevant time periods at Johnson C. Smith University, Plaintiff paid and/or borrowed the total "Cost of Attendance" in the form of federal student loans, grants, scholarship funds, work study, fellowship aid/waiver and/or Plaintiff's own funds or other credit accounts (See attached as **Exhibits D and E**).

28. During the relevant time period at Auburn University, Plaintiff pay and/or borrowed the total "Cost of Attendance" in the form of federal student loans, grants, scholarship funds, work study, fellowship aid/waiver and/or Plaintiff's own funds or other credit accounts (See attached as **Exhibit F**).

29. In addition, between September 2006 and October 2008, Defendants lent Plaintiff another $120,390.23 in ten (10) direct to consumer Tuition Answer loan accounts; two (2) Chase Undergraduate Loan Program Direct to Consumer accounts; and two (2) Graduate Loan Program Direct to Consumer accounts through Defendant Navient and/or Defendant JPMorgan and/or Defendant Turnstile, and one (1) ALPLN loan account through Defendant AES and/or Defendant Turnstile. The Subject Loans were originated as follows (See attached as **Exhibits G and H**):

    a. Loan ending 4715, originated on September 18, 2006 in the amount of $7,315.00 to Plaintiff;

    b. Loan ending 4723, originated on December 19, 2006 in the amount of $8,520.00 to Plaintiff;

    c. Loan ending 4731, originated on December 22, 2006 in the amount of $5,325.00 to Plaintiff;

    d. Loan ending 4749, originated on January 16, 2007 in the amount of $7,455.00 to Plaintiff;

    e. Loan ending 4756, originated on March 20, 2007 in the amount of $6,390.00 to Plaintiff;

    f. Loan ending 4764, originated on May 08, 2007 in the amount of $5,225.00 to Plaintiff;

    g. Loan ending 4772, originated on May 09, 2007 in the amount of $2,090.00 to Plaintiff;

    h. Loan ending 4780, originated on July 11, 2007 in the amount of $9,585.00 to Plaintiff;

    i. Loan ending 4798, originated on October 01, 2007 in the amount of $15,900.00 to Plaintiff;

    j. Loan ending 4806, originated on December 31, 2007 in the amount of $2,283.00 to Plaintiff;

    k. Loan ending 0565, originated on October 07, 2008 in the amount of $7,142.00 to Plaintiff;

    l. Loan ending 2892, originated on July 23, 2008 in the amount of $12,000.00 to Plaintiff;

    m. Loan ending 5454, originated on July 23, 2008 in the amount of $12,000.00 to Plaintiff;

    n. Loan ending 9063, originated on March 10, 2008 in the amount of $11,339.00 to Plaintiff;

    o. ALPLN Loan, originated on November 28, 2007 in the amount of $7,821.23 to Plaintiff.

30. Additionally, Plaintiff co-signed for a loan for Kimberly Williams, who is neither Plaintiff's spouse nor a dependent. The relevant loan ending 9311, originated on February 11, 2008 in the amount of $13,250.00 through Defendant Navient and/or Defendant JPMorgan and/or Defendant Turnstile (See attached **Exhibit G**).

31. For the academic year of 2004-2005, Plaintiff paid and/or borrowed the total educational expenses at Johnson C. Smith University through federal student loan(s), grants, scholarship funds, work study, fellowship aid/waiver and/or Plaintiff's own funds or other

9

credit accounts. As such, Plaintiff was able to pay the total "Cost of Attendance" without the use of any private student loans similar to the Subject Loans at issue here.

32. For the academic year of 2005-2006, Plaintiff paid and/or borrowed the total educational expenses at Johnson C. Smith University through federal student loan(s), grants, scholarship funds, work study, fellowship aid/waiver and/or Plaintiff's own funds or other credit accounts. As such, Plaintiff was able to pay the total "Cost of Attendance" without the use of any private student loans similar to the Subject Loans at issue here.

33. During the academic years of 2006-2007, Plaintiff received $1,500.00 in federal student loans, $3,460.00 in Pell Grants, $10,300.00 in Riversville Foundation Scholarships, $7,000.00 in Duke Scholarships and the Subject Loans in the amount of $51,905. The applicable Cost of Attendance for the year for a student living off campus (no in-state/out-of-state distinction) was $21,604.00. As such, the amount of the Subject Loans extended to Plaintiff in the amount of $51,905, exceeded the Cost of Attendance. Therefore, the loan accounts with numbers ending in 4715, 4723, 4731, 4749, 4756, 4764, 4772 and 4780 were not qualified education loans.

34. During the academic years of 2007-2008, Plaintiff received $5,050.00 in federal student loans, $3,460.00 in Pell Grants, $12,000.00 in Riversville Foundation Scholarships, $4,000.00 in Smart Federal Grant and the Subject Loans in the amount of $37,343.23. The applicable Cost of Attendance for the year for a student living off campus (no in-state/out-of-state distinction) was $22,404.00. As such, the amount of the Subject Loans extended to Plaintiff in the amount of $37,343.23, exceeded the Cost of Attendance. Therefore, the loan accounts with numbers ending in 4798, 4806, 9063, and the ALPLN loan were not qualified education loans.

35. During the academic year of 2008-2009, Plaintiff attended Auburn University. He received a $30,000 stipend for the 12 months term *plus* the cost of tuition and health insurance from his National Science Foundation Alabama Louis Stokes Alliance for Minority Participation Bridge to the Doctorate Fellowship starting in Fall of 2018 (See attached as **Exhibit I**) and $11,627.00 in federal student loans as well as $31,142.00 from the Subject Loans. The Cost of Attendance published by Auburn University for its Master's program for an out-of-state student living off campus not with family for the year was $29,646.00. As such, the amount of the Subject Loans extended to Plaintiff in the amount of $31,142.00 exceeded the Cost of Attendance. Thus, the loan accounts with numbers ending in 2892, 5454 and 0565 were not qualified education loans.

36. During the academic year of 2009-2010, Plaintiff paid, received and/or borrowed the total educational expenses at Auburn University through federal student loan(s), grants, scholarship funds, work study, fellowship aid/waiver and/or Plaintiff's own funds or other credit accounts. As such, Plaintiff was able to pay the total "Cost of Attendance" without the use of any private student loans similar to the Subject Loans at issue here.

37. As the creditors, the Defendants' bear the burden of determining whether the Subject Loans are excepted from discharge, and where doubt exists, seeking clarity from the court. However, because Defendants have failed to file an adversary proceeding, Plaintiff is compelled to bring this proceeding to determine their dischargeability. The burden of proof to show that a debt exists, and the debt is the type excepted from discharge under §523 rests upon Defendants.

**C. Alternatively, the Subject Loans Pose an Undue Hardship on Plaintiff Curtis C. Cain**

38. Plaintiff Curtis C. Cain is 34 years old. He is employed as an assistant professor at Howard University earning a gross salary of $135,000 annually. Plaintiff rents his home and owns two vehicles for himself and his wife. The total student debts owed by Plaintiff, including the Subject [Private] Loans are more than $400,000.00.

39. Plaintiff is married with one 8-year-old child. Plaintiff's net monthly income is approximately $9,127.94 including his part-time position. His monthly necessary expenses including rent, food, home maintenance and upkeep, vehicle expenses and auto insurance and family debt payments are $9,277.18, which leaves him with little to no ability to make the monthly payments for the Subject Loans while also providing for himself and his family.

40. Plaintiff does not anticipate ever being able to make enough money to repay the Subject Loans and maintain a minimal standard of living for himself and his dependents.

41. The substantial amount due under the Subject Loans, combined with Plaintiff's other obligations, including repayment of the federal student loans where he owes U.S. Department of Education $169,258.00, employment history and prospects, and other factors, create an undue hardship for Plaintiff and his dependents as contemplated under 11 U.S.C. § 523(a)(8).

42. Plaintiff has made good faith efforts to repay his student loans, including the Subject Loans, through forbearance, deferment and paying the monthly payments, or a significant portion, when possible.

43. Plaintiff's income and employability prospects are likely to persist for a significant portion of the repayment period of the Subject Loans.

44. Due to the filing of the bankruptcy petition by Plaintiff, an ipso facto clause was triggered under the Subject Loans which accelerated the loan balances due. As such, Plaintiff currently owes the entire amount, due immediately, which he cannot reasonably repay.

45. Plaintiff has retained the services of the undersigned attorney and has agreed to pay reasonable attorney's fees.

## V.
## CAUSES OF ACTION

### COUNT ONE – DISCHARGE OF NON-QUALIFIED PRIVATE STUDENT LOANS HELD BY DEFENDANTS UNDER 11 U.S.C. § 523(a)(8)

46. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

47. The Subject Loans should be discharged because they were unsecured consumer loans, made based on the consumer's credit and/or dependent on one or more co-signer, and bearing high variable interest rates rather than non-dischargeable debts contemplated by §523(a)(8).

### COUNT TWO – UNDUE HARDSHIP

48. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

49. In addition to and in the alternative of the foregoing relief, Plaintiff prays the Court to declare that repayment of the Subject Loans would constitute an undue hardship upon himself and his family and therefore the Subject Loans are discharged pursuant to §523(a)(8).

50. The Subject Loans held by Defendants should be determined to be dischargeable pursuant to 11 U.S.C. § 523(a)(8) as an undue hardship.

## VI.
## JURY DEMAND

Pursuant to his rights under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all triable issues.

## VII.
## PRAYER

In light of the foregoing, Plaintiff requests that Defendants be cited to appear and judgment be entered as follows:

**(1)** the Subject Loans owed to Defendants are not qualified educational loans and therefore are dischargeable pursuant to 26 U.S.C. §221(d)(1) and (2) and 11 U.S.C. §523(a)(8)(B);

**(2)** In the alternative, the Subject Loans owed to Defendants are dischargeable pursuant to 11 U.S.C. § 523(a)(8) as an undue hardship.

**(3)** allow amendment to this Complaint to add parties in the event that additional parties are necessary for the adjudication of Plaintiff/Debtor's claims for discharge of the Subject Loans;

**(4)** award reasonable attorneys' fees and costs to the fullest extent permitted under the law; and

**(5)** grant other such relief as the Court deems just and proper.

Dated: December 12, 2020

Respectfully submitted,

/s/ Scott E. Brannan, Esq.
Scott E. Brannan, Esq.
PA Atty ID#: 325985
ARM Lawyers
115 East Broad Street
Bethlehem, PA 18018
610-849-2788
**ADMITTED *PRO HAC VICE* FOR DEBTOR/PLAINTIFF**